**WESTINGHOUSE ELECTRIC & MFG. CO.
v. POWERLITE SWITCHBOARD CO.**

No. 9669.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1944.

As Amended June 19, 1944.

A. J. Hudson, of Cleveland, Ohio, and Victor S. Beam, of New York City (Kwis, Hudson, Boughton & Williams, of Cleveland, Ohio, on the brief), for appellant.

Albert R. Teare, of Cleveland, Ohio (Bates, Teare & McBean, Albert R. Teare, and Robert H. McBean, all of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The patents involved in the present infringement suit are Jennings reissue #19,887, granted March 10, 1936, for a panel circuit breaker, and Austin, #1,705,700, March 19, 1929, for a control apparatus. Both are in the electrical art and with affirmance in all respects of the report of a special master and the denial of exceptions thereto, were held invalid and not infringed by the appellee.

The Jennings patent relates to a distributing panel board wherein the branch and main line circuits of an electric light system are controlled by automatic circuit breakers adapted to open the circuit when a severe overload or a short circuit occurs. The ordinary lighting circuit in residences and small apartment buildings is designed to carry a load not greatly in excess of 15 amperes, but if a greater load were impressed upon it the wires would become overheated and perhaps start a fire if a safety device were not provided. It long had been customary to mount a fuse having a melting point of predetermined value, in each circuit upon the panel board, so that when a load of greater amperage than that for which the fuse was calibrated was impressed upon the circuit, the circuit would be broken by the melting of the fuse and danger avoided. The circuit then could be reestablished by inserting a new fuse in proper connection on the panel board. It was found, however, that electrically unskilled persons attempting to make a fuse replacement would sometimes insert a fuse of greater ampere capacity than that for which the circuit was designed, or would restore the circuit by the introduction of a coin or a piece of copper wire to bridge the contacts. In such cases the circuit would be left without protection of a safety device and danger by fire, the result.

The art, therefore, concerned itself with the problem of avoiding the use of fuses and evolved contacts which an electrically

unskilled person could easily restore to working condition if broken through an overload, without creating hazard. So a device long known in the electrical art as a circuit breaker, was substituted in each circuit for the destructible fuse. Such circuit breakers are, in reality, switches which are thermally or electro-magnetically controlled, so that when an excess of current passes through the circuit the switch will automatically be moved to open position. It may then be restored by the simple process of moving a handle to restore the contacts.

Jennings, in reissue patent #19,887, was concerned with devising a distribution panel board which had incorporated into it as many circuit breakers as there were circuits, in such manner as to prevent access to the mechanism of the circuit breaker so that its calibration could not be disturbed by the householder or casual person, but which nevertheless left the handles of the circuit breakers available so that the circuits could readily be closed after automatic opening. He devised a panel wherein the enclosures for the circuit breakers are fastened to the base by a means constituting a seal, with handles accessible from the exterior of the enclosure but otherwise covered by the panel board housing, in such manner that they are inaccessible so long as the cover is in operative position. Thus, unauthorized tampering with the circuit breaker units is precluded, for in order to obtain access to the circuit breaker mechanism it would be necessary to remove the housing cover and the enclosure after breaking the seal. This is the main object of his invention, although he also provided a venting system consisting of a channel or flue for permitting the escape of gases generated by the operation of the circuit breaker, and an arrangement whereby each circuit breaker could be removed from the housing without disturbing the others or interrupting the service by them controlled.

The Jennings conception had merit. Our problem, however, is to determine whether it constituted invention as that term, so incapable of definition, is applied in the patent law to denote contributions to a given art beyond the routine skill of the mechanic. The master, in his analysis of the evidence—an analysis fully sustained by the record—found that the appellant's expert had conceded that Jennings

was not the first to put circuit breakers on a distribution panel, not the first to provide means for enclosing them or to apply a cover over them, nor the first to conceive a panel board with a liner extending around the opening to prevent access to their mechanism; that he was not the inventor of a circuit breaker having a rectangular case; that the sealing of electrical equipment in some form or other was used for years prior to Jennings, and that when asked if Jennings was the first to conceive a panel board having a liner around the opening to prevent access to the mechanism back of the liner, answered in the negative, stating that the Wesley patent (#926,-372) had showed that. This concession would seem to be sufficient, without more, to sustain a holding of invalidity in respect to Jennings. We have, however, in an excess of caution, and paying tribute to the presumption of validity that inheres in a patent grant, searched the record and given careful attention to the briefs, in an endeavor to ascertain precisely what it is that is claimed for Jennings by way of inventive concept.

Clearly no invention can be perceived in sealing the ends of the holes that accommodate screws holding the circuit breakers together or in attachment to the panel board, with sealing wax. Though there may be utility in such seal, for, if broken, an inspector will be apprised that the mechanism has been tampered with, this is but a common and obvious expedient. Nor does invention lie in the mere arrangement by which a circuit can be restored by the operation of an accessible handle while the mechanism of the circuit breaker can be tampered with only by the removal of a cover plate of such size and proportion as to "discourage" its removal by unauthorized persons. Providing means by which part of a mechanism may be made accessible while access is denied to other parts, is old, not only in the electrical art, but in many other arts, and in many well known mechanisms and structures. The use of a double door or a door within a door, has no novelty and its application to a panel board, even if for the first time, would fail to denote invention either under the old or the more modern[1] concept of that abstraction.

This court has had occasion to differentiate mere conception, however mer-

---

[1] Murray-Ohio Mfg. Co. v. E. C. Brown Co., 6 Cir., 124 F.2d 426, 428.

itorious, from the means for reducing it to practice. We said, in Reo Motor Car Co. v. Gear Grinding Mach. Co., 42·F.2d 965, 968, wherein there were concurrent patents for method, machine, and product, "The improver must first conceive, in a general way, the method or plan * * * and must then devise means for effectively and sufficiently maintaining * * *. Until this can be done, the conception is not an invention, because it is useless. When, however, the method is reduced to practice so that its utility is demonstrated, the method becomes a patentable invention, as the means also *may be*." In Nestle-Le-Mur' v. Eugene, Ltd., 6 Cir., 55 F.2d 854, we perceived that the inventor had discovered a new and useful process for accomplishing a given result, but he applied for and obtained a patent upon an obvious mechanical and electrical device for practicing the method. We found that while the result was new the novelty was due to the method and not to the machine which was an old device put to an analogous use. While no novel method is here involved we have what is claimed to be, in relation to panel boards, a new concept, but examining the means by which the conception is realized, it immediately appears that they are old and obvious. We are constrained to hold the Jennings patent, in respect to all claims in suit, invalid for want of invention, and find it unnecessary to discuss question of anticipation, laches, or infringement.

The Austin patent, while it relates generally to control apparatus, is particularly directed to what is specifically known as the contact finger of an arc-rupturing device. In an electric circuit which incorporates movable contact members, the breaking of the circuit produces an arc, and where the ampere value is high the arc may be of destructive proportions. Means were therefore employed to quench the arc. An expedient for this purpose is what is known as the magnetic blow-out which calls for the introduction of a magnetic field in the vicinity of the arcing contacts. The function of the magnetic field is to push the arc aside and to so extend it in the air that rupture will result. The art was long familiar with the magnetic blow-out. It was disclosed in many prior art patents, including Loguin #1,229,489, White #967,281, Hutt #1,342,999, James #1,386,002, and in a German patent #161,-173, as early as 1905.

While Austin did not invent the magnetic blow-out it is claimed for him that he sensed the special problem of providing a compact blow-out structure for small circuit breakers suitable for use in the panel boards of dwellings. In such circuit breakers there is little room for the free and natural dissipation of the arc incident to the opening of a circuit, and the problem is intensified by the fact that the structure must be enclosed. He therefore claims to have devised a blow-out which functions upon a novel principle and lends itself readily to use in small compact circuit breakers. His object also was to provide a contact finger that could be economically manufactured, and claims that simplicity of construction was achieved by using the parts of the contact finger for a plurality of functions. The single claim of Austin in suit, is Claim 1, which is directed to "a contact finger comprising, in combination, (a) a base, (b) a contact member movably mounted on the base, (c) extensions formed on the base and disposed to extend on opposite sides of the contact member to provide pole pieces to concentrate lines of magnetic force induced by current flowing in the contact member thereby to form an arc-rupturing field."

In response to the contentions made by the appellee, sustained by the court and master, that the Austin patent is anticipated by prior art disclosures, which likewise show the base, contact member and side pieces, the appellant undertakes to point out that in such patents as, for example, the Hutt patent, there is a magnetic coil connected in the circuit of which the contact members are a part, that the current flowing through the coil sets up the magnetic field, and the core and pole pieces, being of magnetically permeable material, concentrate flux which passes between the pole pieces and envelops the contact members. Austin, it is claimed, definitely departed from such prior art practice by abandoning the coil. His concept was, it is urged, to provide a contact finger so intimately associated with the pole pieces joined by a core, that the field of flux set up by the passage of current through the contact finger, would be concentrated for arc-rupturing purposes, and that this definitely was a new conception in the application of a magnetic blow-out, having the advantage of eliminating the coil and so permitting more compact construction and reduction of cost in manufacture.

Austin, however, provided a flexible conductor connected to the contact member. It is a single wire conductor which the defendant claimed and which the master found to be, in effect, a one-turn coil. It was thought that if the wire were removed and the current flowing through the finger itself depended upon, the blow-out would be inoperative. Appellant's response to this conclusion is that the conductor merely facilitates electric conductivity and that its omission would simply mean that the current passes through the contact carrier and the contact member. This, however, does not appear to be the teaching of the patent which describes the purpose of the pole pieces "to concentrate the lines of magnetic force induced by current flowing in the conductor." Nor does there seem to be any dispute in the evidence that the conductor is, in effect, a one-turn coil. There is justification, therefore, for the conclusion that the conductor wire was but the equivalent of the prior art coils, and that in this respect the patent discloses no substantially new method of operation over prior art.

Much importance was attached in the patent office to the fact that Austin's improvement consisted in making a contact finger with the pole pieces formed integral with the base so that the whole structure may be stamped, and it was there stressed that the simplifying of manufacturing processes and reduction of cost to the consumer, was a distinct advance in the art and entitled the applicant to a patent. In pressing its claim for infringement, however, the appellant finds itself compelled to disclaim any limitation in the patent which requires integrity of base and pole pieces, because of the language of the claim which describes the extensions as "formed on the base." Whatever may be the virtue of this contention upon the issue of infringement, it must be noted that most of the prior art structures disclose the core and base to be distinct pieces with the contact member mounted on the base rather than on the core.

■ It is urged that neither the master nor the court below understood the Austin patent. Perhaps Austin's solicitor likewise failed in complete understanding. In any event, it would seem to us that the purpose of having the finger and the core in intimate association, whether integral or not, was to develop a field of magnetic flux for blow-out purposes. Since it was found to

be necessary to reintroduce into the combination the old coil or its equivalent, there would seem to be no invention in such association. If, however, the patent solicitor's emphasis on the integral character of the parts for purposes of economical manufacture, is taken to be indicative of the essence of inventive concept in Austin, this integrity is clearly shown in the German patent. The appellant insists that this patent should not be considered as a prior art reference because no translation of the specification was provided by the appellee. The objection comes rather late. The German patent was considered in the patent office, it was discussed by the experts in the court below, and no misunderstanding of its teachings is suggested either on the part of the examiner, witnesses, master or court. In the light of evidentiary analysis and the simplicity of its single drawing, we ourselves appear to have no difficulty. National Enameling & Stamping Co. v. White, D.C., 19 F.Supp. 108, 110, does not appear to apply to a situation like the present. In any event, we have no doubt that if the appellant had had any difficulty in understanding the German patent prior to trial, a bill of particulars or a simple interrogatory would have elicited an accurate and adequate translation of its specification. Certainly Austin's solicitor had no difficulty with it, for he recites his careful study of the German patent in support of his insistence that it would not anticipate the invention disclosed in Claims 5 to 9 of the last amended application.

■ While we have paid tribute to the rule that patent office arguments do not create estoppel, Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 955, we have frequently found such arguments to be very helpful in searching for the inventive concept. When the prior art disclosed and analyzed in the record is considered, we come to agreement with the observation of Austin's solicitor that this particular art had been very thoroughly worked, and that the improvements suggested by Austin were not as pronounced as many made in other arts. The integrity of the parts to permit of economical manufacture, stressed by him as of the essence of the invention, being now denied both as a limitation to avoid prior art, and in support of equivalency in the assailed structure, it seems to us clear that whatever improvement Austin made in the contact finger of a circuit breaker, does

not, by the application of strict standards now applied to invention by decisions of the Supreme Court, rise to the dignity of invention, and that being so the question of infringement does not require consideration.

The decree below is affirmed.