## U. S. BLIND STITCH MACH. CORPORATION v. RELIABLE MACH. WORKS, Inc.

### No. 10.

Circuit Court of Appeals, Second Circuit.
Nov. 6, 1933.

Mock & Blum, of New York City, for appellant.

James & Franklin, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This suit is for the infringement of patent No. 1,706,392, applied for March 31, 1928, and granted March 26, 1929, for a method of treating furs and a machine used therefor. There are five claims; the first and second are apparatus, and the third, fourth, and fifth method claims. The apparatus claims are for a hot roller to place on a well-known electrifying and uncurling machine. The method claims are for the step of moistening the fur prior to using the same in the machine. The decision below is grounded on the defense of noninfringement.

The claims are

"1. A machine for setting the hairs of a pelt comprising brushing means, feeding means adapted to feed the pelt towards said brushing means, and means adapted to heat the fur before it is subjected to the action of the brushing means.

"2. A machine for setting the hairs of a pelt comprising brushing means, feeding means adapted to feed the pelt toward said brushing means, and roller means adapted to heat the fur before it is subjected to the action of the brushing means, and means adapted to force a current of air over the furs after they have been subjected to the brushing action.

"3. A method of setting the hairs of a pelt which consists in moistening and heating the said hairs, and subsequently brushing the hairs while permitting them to dry and cool.

"4. A method of setting the hairs of a pelt which consists in moistening the hair side

thereof, and then brushing the hairs of the fur while subjecting them to the action of an air current to dry them.

"5. A method of setting the hairs of a fur which consists in moistening the hairs, directly heating the said hairs, brushing the said hairs while they are in the hot and moist condition, and subjecting the brushed hairs to the action of an air current to rapidly dry them."

The specifications and drawings of the patent disclose a machine having a hollow heated roller which is pressed against the hair side of the previously moistened fur to be treated and having feed rollers which propel the heated fur forward on the machine so that it is subjected simultaneously to an electrifying and brushing treatment by a wire brushing means and to a drying treatment by a forced current of air.

The new thing for the apparatus claims, as the patent reads, was to add the hot roller, 27, to the machine in advance of the rollers which engage and carry through the fur. In appellant's commercial machine, the heating roller is dispensed with and the upper feeder roller is converted into a heating roller. It is admitted that both appellant and appellees use the same type of electrifying and uncurling machine. In the appellee's machine, the fur is fed from the work table by means of a lower feed roller and the upper pressure roller to a position between a pressure plate and the rapidly revolving drum. This drum on appellee's machine carried alternately spaced ironing segments and brushing segments; each ironing segment being provided with an electrical heating unit. Thus there is produced rapidly alternating brushing and ironing operations on the fur. The appellee feeds the fur through the machine in a dry condition.

The method claims of appellant propose the step of moistening the fur prior to using the same in the machine. Claim 4 provides the moistening of the fur prior to its use. Claims 3 and 5, in addition, involve the steps of heating the hairs of the fur and cover the method of moistening and heating the hairs of the fur and subsequently brushing them. This brings up the hair and luster so that it will withstand rain and have long life and a glossy appearance.

We think that claims 1 and 2 are anticipated by the Pomeranz previous application, which was filed June 20, 1925. That petition for a patent provided for an improvement in a machine for fur electrifying, ironing, and uncurling. The invention is established by the testimony of the inventor, his patent draftsman and attorney, as well as by documentary proof, to wit, the abandoned application and original drawing. This was filed nearly three years before the patent here in suit. We are satisfied that the commercial machine of the appellant is an exact copy of the Pomeranz machine shown in the first sheet of his drawings. Pomeranz' draftsman fully explains his original sketch and points out all the elements shown in appellant's machine with the exception that in the Pomeranz application the heating element may have been stationary while in appellant's it is rotatable. In Pomeranz' application the heating element is described as "preferably stationary, though it may be movable or rotatable if desired." In Pomeranz' actual construction, the heating element revolved. We think the appellee may securely rely on Pomeranz' drawings which are specifically described in his specifications.

The machine was used by Pomeranz in his business in 1925 and thereafter to 1929, and was dismantled when he obtained the machine from the appellee. Pomeranz testified that he had an actual, full-sized, machine made prior to the date of appellant's application. The machine was shown to various people who came into his place of business and was operated on furs from 1925 to 1929. While Pomeranz' machine was operated on dry furs, still he did moisten some furs, particularly beaver, and found the result was fair. He also says that he got the same result without the use of water. It was in open and notorious use for any one to see who visited the factory. There is ample corroboration of this use. No secrecy was maintained as to it.

It is argued by appellant that the heating coil of the type Pomeranz used did not yield sufficient heat. But Pomeranz seems to have had the same type of heating coil that the appellant used, and it is spaced in the same way from the inner wall of the heating roller. Apparently there was sufficient heat to obtain a gloss on the fur as desired. Pomeranz specifies the "heating element irons and puts a gloss on the fur." While the Pomeranz application was abandoned, the machine was actually used for a sufficiently long period to anticipate the appellant. Pomeranz abandoned his claims when the Examiner rejected them on the Schifrin patent, No. 1,555,521, and said: "In view of the fact that it was well known to iron fur to gloss it, it would not involve invention to iron it before brushing it to give it a gloss." As a consequence aban-

donment occurred May 2, 1927. This constituted a sufficiently clear anticipation by a machine which had been reduced to practice. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610.

Since we have concluded that Pomeranz fully disclosed appellant's invention, it becomes unnecessary to consider the other prior art to which we are referred.

The method claims cover no more than the single step of moistening certain kinds of furs when they are run through the machine. It is clear that there could not be invention to suggest a single step of moistening certain kinds of furs which run through the machine where the same step of moistening the same kind of furs was practiced in the prior art in ironing. There is ample testimony of the general practice in the trade "to moisten a fur if you are going to heat it with a hot iron." Furs were moistened in the same way in prior hand operations. Since we have held the apparatus claims to be invalid on Pomeranz, there cannot be invention in the use of an old method of moistening furs. This preliminary treatment given the furs was a common practice before ironing or brushing the fur, both when performed by hand and by machine. These claims are invalid.

Decree affirmed.