MONROE AUTO EQUIPMENT COMPANY, Plaintiff,

v.

SUPERIOR INDUSTRIES, INC., Defendant.

Civ. A. No. 1336–59.

United States District Court
S. D. California,
Central Division.

June 7, 1963.

Findings of Fact, Conclusions of Law and Judgment July 10, 1963.

Lyon & Lyon, by Charles G. Lyon, Los Angeles, Cal., Harness, Dickey & Pierce, by Don K. Harness, Detroit, Mich., for plaintiff.

Fulwider, Patton, Rieber, Lee & Utecht, by Francis A. Utecht, Los Angeles, Cal., for defendant.

CARR, District Judge.

This cause having come on for trial, the court having considered the evidence, the arguments, and the briefs, and being fully advised in the premises, it is the judgment of the court that plaintiff has failed to establish a case; that defendant is entitled to judgment; that both Patents No. 2,896,938 and No. 2,912,235 (hereinafter referred to as 938 and 235) are invalid; and that defendant has failed to sustain its counterclaims for damages for unfair competition and for attorney's fees. In order that the findings of fact, conclusions of law, and decree may be in keeping with the decision of the court, herewith follows the basis for the decision:

Respecting the cause of action for infringement of 938 and 235, the evidence compels the conclusion that such patents are invalid for want of invention since they are both a mere regrouping or utilization of old elements without change of function. Furthermore, the patents are invalid because they fail to disclose any inventive advance over the prior art in particular Exhibit E, French patent 1,-044,393; Exhibit D, Italian patent 467,-071; Exhibit G, Farmer patent 2,344,-858; Exhibit L, Chayne patent 2,159,-203; Exhibit BD1, 1952 English Ford; and the Knoedler device, Exhibits AT and AL. The evidence clearly supports the conclusion that any advance over the prior art would have been obvious to a person skilled in the art and, in particular, there is no patentable invention involved in positioning a rubber sleeve around a shock absorber to prevent metal to metal contact and noise. Respecting the Knoedler device the proof was clear and convincing that such device was known and used by others in this country before the invention thereof by the patentee Walker.

Respecting the validity of both 938 and 235, it is noted that the prior art heretofore mentioned was not cited by the Patent Office and, therefore, the presumption of validity is dissipated. Pressteel Company v. Halo Lighting Products, Inc. (9 Cir.), 314 F.2d 695.

Since the conclusion has been reached that neither 938 nor 235 is valid, it is unnecessary to make findings relative to infringement. Bliss v. Gotham Industries, Inc. (9 Cir.), 316 F.2d 848; Pressteel Company v. Halo Lighting Products, Inc. (9 Cir.), 314 F.2d 695.

Counsel for defendant is directed to prepare proposed findings of fact, conclusions of law, and decree pursuant to Local Rule 7

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

This cause having come on regularly for trial before the Honorable Charles H. Carr, Judge of the United States District Court for the Southern District of California, Central Division, the Court having considered the evidence, arguments and the briefs and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. The plaintiff herein, MONROE AUTO EQUIPMENT COMPANY, is a

corporation of the State of Michigan having its principal place of business at Monroe, Michigan.

2. Defendant, SUPERIOR INDUSTRIES, INC., is a corporation of the State of California having an established place of business at 14721 Keswick Street, Van Nuys, California, within the Southern District of California.

3. This cause of action arises under the Patent Laws of the United States of America and accordingly this Court has jurisdiction thereover.

4. On July 28, 1959 United States Letters Patent No. 2,896,938 entitled "VEHICLE SUSPENSION DEVICE" was issued to plaintiff, MONROE AUTO EQUIPMENT COMPANY, as the assignee of Brooks Walker.

5. On November 10, 1959 United States Letters Patent No. 2,912,235 entitled "AUTOMATIC AUXILIARY SUPPORT FOR A VEHICLE" was issued to plaintiff, MONROE AUTO EQUIPMENT COMPANY, as the assignee of Brooks Walker.

6. The defendant has within six years last past made and sold devices alleged by the plaintiff to infringe said Letters Patent No. 2,896,938 and Claim 14 of Patent No. 2,912,235 in the Southern Judicial District of California and elsewhere in the United States.

7. Plaintiff has manufactured and sold devices constructed in accordance with the alleged inventions of said United States Letters Patent No. 2,896,938 and Claim 14 of Patent No. 2,912,235.

8. On November 27, 1959 plaintiff's attorney on behalf of plaintiff charged defendant in writing with infringement of said Patent No. 2,896,938 and Claim 14 of said Patent No. 2,912,235. Plaintiff has also given notice of said patents upon devices made and sold by plaintiff constructed in accordance with the alleged inventions of said patents.

9. As evidence of the prior art, defendant introduced the following exhibits at the trial of this action:

French Patent No. 1,044,393 (Exhibit E)

Italian Patent No. 467,071 (Exhibit D)

Farmer U. S. Patent No. 2,344,858 (Exhibit G)

Chayne U. S. Patent No. 2,159,203 (Exhibit L)

1953 English Ford Front Suspension (Exhibit BD–1)

10. Prior art French Patent No. 1,-044,393 and Italian Patent No. 467,071 disclose an auxiliary suspension device for vehicles consisting of a tubular shock absorber surrounded by a coil spring and means for supporting each end of such coil spring with respect to one of the relatively movable parts of the shock absorber. The arrangement of a tubular shock absorber surrounded by a coil spring in an automobile suspension was utilized in the prior art 1953 English Ford Front Suspension (Exhibit BD–1). Although the English Ford front suspension incorporated a rubber sleeve on the shock absorber, such sleeve was not intended to act as a spacer and the coil spring did not buckle into contact with such sleeve. Prior art Farmer Patent No. 2,344,858 discloses the use of a rubber sleeve between a coil spring and a tubular metallic element encircled by such coil spring. Further, the use of rubber between relatively movable metal parts to avoid metal-to-metal contact is old. This was admitted by the plaintiff in Pre-Trial Conference Order Admitted Fact (Y).

11. At the trial of this action plaintiff specified that it was charging defendant with infringement of Claims 2, 3 and 4 of Patent No. 2,896,938.

12. Patent No. 2,896,938 in suit relates to an auxiliary vehicle suspension device that includes a conventional tubular shock absorber disposed within a coil spring. The shock absorber consists of two parts, one being a body portion 10 and the other a piston and rod. The piston rod telescopes into the body portion when the shock absorber is compressed. The piston rod is connected at its upper portion to a depending dust guard 11 having an outwardly flaring

flange 11a at its bottom. The ends of the coil spring are supported with respect to the relatively movable parts of the shock absorber. The specification of this patent recites "A sleeve 86 of non-metallic rubber or fiber material fits between the adaptor 80 and the flange 11a of the dust guard 11". It is the addition of this sleeve 86 to the prior art combination of a tubular shock absorber disposed within a coil spring that provides the basis for the assembly recited in Claims 2, 3 and 4 of Patent No. 2,896,938.

13. The combination of a tubular shock absorber and a coil spring surrounding such shock absorber as disclosed in Patent No. 2,896,938 was old in the prior art as set forth hereinabove. When these two old elements are united with a rubber sleeve therebetween there is no change in the respective functions of any of these elements, and the result is a mere aggregation of old elements. Accordingly, Claims 2, 3 and 4 of Patent No. 2,8C3,938 are invalid for want of invention.

14. The difference between the subject matter of Patent No. 2,896,938 in suit and the prior art as exemplified by the aforementioned prior art French Patent No. 1,044,393, Italian Patent No. 467,071, Farmer U. S. Patent No. 2,344,858 and the 1953 English Ford Front Suspension are such that the subject matter as a whole would have been obvious to one having ordinary skill in the automotive vehicle suspension art at the time of the alleged invention by the patentee Brooks Walker. In particular, in the assembly of a tubular shock absorber and a coil spring disposed substantially concentrically around said shock absorber there is no invention involved in positioning a rubber sleeve around said shock absorber to resist lateral movement of said spring and prevent metal-to-metal contact and noise. Accordingly, Claims 2, 3 and 4 of said Patent No. 2,896,938 fail to disclose any inventive advance over the prior art and said patent claims are invalid.

15. Prior to the time of the alleged invention of Patent No. 2,912,235 in suit it was old to provide a "sea-leg" rear shock absorber mounting for automotive vehicles. Thus, Pre-Trial Conference Order Admitted Fact (LL) states:

"It was published in the S. A. E. Journal of 1949 that:

'most cars have adopted what is known as the sea-leg mounting for the rear shock absorbers. The top mounting pin is closer to the center of the car than the lower one so that the shock leans inwardly at approximately a thirty degree angle. This has been found beneficial in providing lateral stability for the rear end, and in some instances made possible the elimination of a track bar' ".

This "sea-leg" type of shock absorber mounting is disclosed in prior art Chayne Patent No. 2,159,203 wherein there is shown an automobile rear suspension including an axle 3, a pair of rear wheels 7 and 8, a frame 4 and a pair of sea-leg mounted tubular shock absorbers 29 and 30 interposed between the axle and the frame. Also interposed between the axle and the frame are main suspension springs 14 and 15.

16. Allegedly infringed Claim 14 of Patent No. 2,912,235 recites an automotive vehicle rear suspension that includes a frame, an axle, a pair of rear wheels, a pair of sea-leg mounted tubular shock absorbers interposed between the frame and the axle, main suspension springs interposed between the frame and the axle and a coil spring surrounding each of said shock absorbers.

17. As set forth hereinabove it was old in the prior art to provide an automobile rear suspension including a frame, an axle, a pair of rear wheels and a pair of sea-leg mounted tubular shock absorbers interposed between the axle and the frame, with main suspension springs also being interposed between the axle and the frame. It was also old in the prior art to provide a tubular shock absorber surrounded by a coil spring, as exemplified by French Patent No. 1,044,393 and Italian Patent No. 467,071. Fur-

ther it was old in the prior art to interpose a coil helper or auxiliary spring between a rear axle and the frame, as exemplified by Brooks Walker U. S. Patent No. 2,518,733 (Exhibit 53). When a coil spring is disposed around a sea-leg mounted tubular shock absorber in the rear suspension of an automotive vehicle, there is no change in the respective functions of any of the elements of such rear suspension, and the result is a mere aggregation of old elements. Accordingly, Claim 14 of Patent No. 2,912,235 is invalid for want of invention.

18. The difference between the subject matter of Claim 14 of Patent No. 2,912,235 in suit and the prior art as exemplified by the aforementioned Chayne Patent No. 2,159,203, French Patent No. 1,044,393, Italian Patent No. 467,071 and Brooks Walker Patent No. 2,518,733 are such that the subject matter as a whole would have been obvious to one having ordinary skill in the automotive vehicle suspension art at the time of the alleged invention by the patentee Brooks Walker. Accordingly, Claim 14 of Patent No. 2,-912,235 fails to disclose any inventive advance over the prior art and said patent is invalid.

19. With respect to both Patent No. 2,896,938 and Claim 14 of Patent No. 2,-912,235 in suit, the usual presumption of validity which attaches to a patent is dissipated since the prior art French Patent No. 1,044,393; Italian Patent No. 467,071; Farmer Patent No. 2,344,858, Chayne Patent No. 2,159,203; and the 1953 English Ford Front Suspension were not cited by the Patent Office during the prosecution of said patents in suit.

20. Plaintiff was limited to a date of alleged invention of May 6, 1954 for Patent No. 2,896,938 in suit and a date of alleged invention of September 30, 1954 for Patent No. 2,912,235 in suit, i. e. the filing dates of said patents, since plaintiff failed to provide evidence of any earlier dates. Defendant produced clear and convincing proof that prior to these dates a device embodying the alleged invention of said patents was known and used in this country by Fred E. Knoedler and Harry Richard Knoedler both of Streator, Illinois. Additionally, the alleged invention of Claim 14 of Patent No. 2,912,235 was known and used in this country by John D. Truedson now of Phoenix, Arizona. Fred E. Knoedler constructed several pairs of so-called "Hydro Shock" booster springs as early as the Spring of 1953. These devices included a tubular shock absorber surrounded by a coil spring, with a rubber sleeve carried by the shock absorber and interposed between the shock absorber and the spring to resist lateral movement of said spring and prevent metal-to-metal contact and noise. Such Hydro Shock devices would have infringed Claims 2, 3 and 4 of Patent No. 2,896,938 if said devices were made after said patent issued. A pair of these Hydro Shock booster spring devices were mounted in a "sea-legs" fashion on the rear suspension of a 1949 Packard automobile owned by Fred E. Knoedler in the Spring of 1953. When so installed the assembly of said Hydro Shock devices on the rear suspension of this automobile would have infringed Claim 14 of Patent No. 2,912,235 if such assembly had been made after said patent issued. Hydro Shock devices operated satisfactorily and proved to be practical in supporting the rear end of the Fred E. Knoedler automobile whereon they were installed.

21. A pair of similar Hydro Shock booster springs made by Fred E. Knoedler and incorporating a rubber or plastic sleeve around the shock absorber were installed on the 1949 Chevrolet of Harry Richard Knoedler in a "sea-leg" fashion during the Summer or Fall of 1953. John D. Truedson installed a pair of the Fred E. Knoedler Hydro Shock booster springs on his 1951 Oldsmobile in about August of 1953. It was not clear that Truedson's Hydro Shock booster springs included a rubber sleeve. However, it was clearly established that the shock absorbers on Truedson's automobile were mounted in a sea-leg fashion and were encircled by a coil spring. The Hydro Shock devices installed on the auto-

mobiles of Harry Richard Knoedler and John D. Truedson operated satisfactorily.

22. No attempt was made to keep the Knoedler Hydro Shock booster spring devices secret. These devices as installed on the 1949 Packard of Fred E. Knoedler were shown to members of the public including employees of Knoedler Manufacturers, Inc. of Streator, Illinois, employees of Beckman Motor Company of Streator, Illinois and the manager of Sig Automotive Parts, Streator, Illinois. Additionally, Knoedler Manufacturers, Inc. advertising (Exhibit AF and Exhibit AG) clearly disclosing the construction of the Hydro Shock booster springs and the sea-leg mounting thereof on the rear suspension of an automobile was sent out to various automotive parts distributors in the Fall of 1953.

23. Fred E. Knoedler filed U. S. Patent Application No. 377,880 on September 1, 1953 (Exhibit AL), which application was later forfeited. This application discloses the Hydro Shock booster spring in detail and includes all of the elements which make up the aggregation of Claims 2, 3 and 4 of Patent No. 2,896,938. Figure 1 of this patent application shows the Knoedler device mounted in a "sea-leg" position on the rear suspension system of an automobile. Hence, the disclosure of this application fully corroborates the other evidence relative to the construction of the Hydro Shock booster spring devices and the mounting thereof in a "sea-leg" fashion on an automobile rear suspension.

24. The knowledge and use of the Fred E. Knoedler Hydro Shock device by others in this country prior to the alleged dates of invention of both patents in suit was clearly established by the evidence. Accordingly, said Knoedler device is a complete anticipation of Claims 2, 3 and 4 of Patent No. 2,896,938 and Claim 14 of Patent No. 2,912,235 under the provisions of 35 U.S.C. § 102(a).

25. Knoedler Manufacturers, Inc. commencing with the Fall of 1953 attempted to market the Hydro Shock device. This attempt was unsuccessful because it was not possible to obtain shock absorbers at a reasonable price and because the Hydro Shock device was outside the farm equipment field in which Knoedler Manufacturers, Inc. was working. It was clearly established that the Hydro Shock devices used by Fred E. Knoedler, Harry Richard Knoedler and John D. Truedson operated satisfactorily and proved effective in supporting the rear end of a heavily loaded automobile. The design of the first Hydro Shock devices was not frozen and Fred E. Knoedler later developed a second type of device utilizing a coil spring that was clamped to the opposite ends of a shock absorber, but not utilizing a rubber sleeve. The Knoedler Hydro Shock device was reduced to practice and it was not an abandoned experiment.

26. Within the week preceding August 22, 1953 John D. Truedson sold his 1951 Oldsmobile with the pair of Hydro Shock devices still mounted in a "sea leg" fashion around the rear shock absorbers thereof. Truedson's automobile was sold to Jacobson Trailer Sales in Fergus Falls, Minnesota. Since this sale was made more than one year prior to the date of filing of Patent No. 2,912,235, i. e. September 30, 1954, Claim 14 of said patent is invalid in accordance with the provisions of 35 U.S.C. § 102(b).

27. Since the conclusion has been reached that Claims 2, 3 and 4 of Patent No. 2,896,938 and Claim 14 of Patent No. 2,912,235 are invalid, no findings are made as to infringement.

28. Defendant failed to sustain its Counterclaim for unfair competition.

## CONCLUSIONS OF LAW

From the foregoing facts the Court makes the following conclusions of law.

1. This Court has jurisdiction over the subject matter of this action and over the parties.

2. Claims 2, 3 and 4 of Patent No. 2,896,938 and Claim 14 of Patent No. 2,912,235 in suit are invalid for want of invention since they are directed to a mere aggregation and regrouping of old elements without change of function. (Great Atlantic & Pacific Tea Company

v. Supermarket Equipment Corporation, 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162)

3. The differences between the subject matter of Claims 2, 3 and 4 of Patent No. 2,896,938 and the prior art are such that the subject matter as a whole would have been obvious to one having ordinary skill in the automotive vehicle suspension art at the time of the alleged invention by the patentee Brooks Walker. Accordingly, said patent claims are invalid in accordance with the provisions of 35 U.S.C. § 103.

4. The differences between the subject matter of Claim 14 of Patent No. 2,912,-235 in suit and the prior art are such that the subject matter as a whole would have been obvious to one having ordinary skill in the automotive vehicle suspension art at the time of the alleged invention by the patentee Brooks Walker. Accordingly, Claim 14 of Patent No. 2,-912,235 is invalid in accordance with the provisions of 35 U.S.C. § 103.

5. The Knoedler Hydro Shock device was known and used by others in this country before the alleged invention of the subject matter of Claims 2, 3 and 4 of Patent No. 2,896,938 and Claim 14 of Patent No. 2,912,235 by the patentee Brooks Walker. This prior knowledge and use is a complete anticipation of said patent claims. Accordingly, said patent claims are invalid in accordance with the terms of 35 U.S.C. § 102(a).

6. The sale of John D. Truedson's 1951 Oldsmobile equipped with a pair of "sea-leg" mounted Knoedler Hydro Shock devices in August of 1953, more than one year prior to the filing date of Patent No. 2,912,235 (September 30, 1954) renders Claim 14 of said patent invalid in accordance with the provisions of 35 U.S.C. § 102(b).

## JUDGMENT

In accordance with the foregoing Findings of Fact and Conclusions of Law it is ordered, adjudged and decreed:

1. That the Complaint be dismissed.

2. That defendant's Counterclaim be dismissed.

3. That Claims 2, 3 and 4 of Patent No. 2,896,938 are invalid.

4. That Claim 14 of Patent No. 2,912,-235 is invalid.

5. That costs be assessed against plaintiff and in favor of defendant in the amount of $1557.86.