MONROE AUTO EQUIPMENT COM-
PANY, Plaintiff-Appellant,

v.

HECKETHORN MANUFACTURING &
SUPPLY COMPANY, Defendant-
Appellee.

No. 15354.

United States Court of Appeals
Sixth Circuit.

May 14, 1964.

Don K. Harness, Detroit, Mich., for appellant, Harness, Dickey & Pierce, Robert L. Boynton, Detroit, Mich., on the brief.

Robert Frank Conrad, Washington, D. C., for appellee, Robert F. Conrad, Watson, Cole, Grindle & Watson, Washington, D. C., on the brief.

Before MILLER, CECIL and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

This is an appeal from a judgment of the District Court holding invalid certain claims of two patents belonging to plaintiff-appellant.

The Monroe Auto Equipment Company, plaintiff-appellant, hereinafter referred to as plaintiff, brought suit against Heckethorn Manufacturing and Supply Company, defendant-appellee, hereinafter referred to as defendant, charging infringement of Patents No. 2,896,938 and No. 2,912,235, hereinafter referred to, respectively, as patents 938 and 235.

These two patents have had long and arduous journeys through the patent office. The original application which resulted in patent 938 was filed May 6, 1954, and the patent issued on July 28, 1959. Patent 235 was based on an application filed September 30, 1954, and was issued on November 10, 1959. Both of these applications were filed by Brooks Walker. Plaintiff is the owner of the patents as assignee of Walker.

The patents relate to auxiliary suspension devices designed for installation on the rear of an automobile. They are mounted at an inclined angle between the rear axle and the chassis frame, a so-called "sea-leg" mounting. They provide additional load carrying capacity and improve the lateral stability of the car.

The device includes a hydraulic direct acting tubular shock absorber surrounded by a relatively long spring of small diameter, the ends of which are supported on the relatively movable telescopic parts of the shock absorber. A rubber tubular spacer sleeve is positioned around the shock absorber so as to fit between it and the coil spring. This maintains the spring in a substantially aligned or concentric relationship relative to the shock absorber, and prevents the spring from buckling or thrashing around. In addition, the spacer sleeve prevents the spring from banging against and damaging the shock absorber, and prevents the noise which would result from the metal-to-metal contact between the spring and the shock absorber.

Plaintiff, the world's largest seller of replacement shock absorbers, began marketing this device in May, 1957, under the name of "Load-Leveler's." The product apparently has enjoyed considerable acceptance and commercial success.

In 1959 defendant began selling a device it called the "Level Ride," the alleged infringer. This too is a combination shock absorber and helper spring. It consists of a telescopic shock absorber disposed within a coil spring. Around the shock absorber and between it and the spring is a tubular rubber sleeve. Since it first went on sale, defendant has changed its device so that it now has two shorter rubber sleeves instead of the one longer sleeve.

At the trial plaintiff limited its charge of infringement to claims 2 and 3 of patent 938 and claim 14 of patent 235. The former refer to the rubber spacer sleeve which fits between the spring and the shock absorber. Claim 14 of patent 235 refers to the so-called "sea-leg" mounting, that is, at an inclined angle between axle and chassis.

In its original complaint plaintiff sought an injunction, an accounting, and legal relief in the form of damages. Plaintiff also filed a demand for a jury trial. Defendant filed a motion to strike the demand for a jury trial, and this motion was granted by the District Judge, the Honorable Marion S. Boyd. The case was tried to the Court and resulted in a judgment holding both patents invalid. The findings and conclusions of the District Court are reported in 204 F.Supp. 249.

Plaintiff appealed from this judgment and from the order striking the demand for a jury trial. This Court, at 305 F.2d 375, vacated the judgment and remanded the case for consideration in the light of Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44. In that case the Supreme Court held that a plaintiff is entitled to a jury trial, even in an essentially equitable suit, if any legal relief is sought involving factual questions that need to be resolved.

On remand, the District Court held that the patents were invalid as a matter of law, and that therefore there was no prejudice to the plaintiff in striking the demand for a jury trial. 214 F. Supp. 704.

Plaintiff appeals from this judgment. It also filed in this Court a motion seeking an order that the case be remanded with directions for trial before a jury. This Court denied the motion, saying: "Our previous ruling was not that appellants were entitled to a jury trial . . . but only that the District Court consider the case again in light of the Supreme Court decision." This Court observed that "if the controlling facts of the case were undisputed so that the District Judge had only a legal question to decide, then appellant was not prejudiced by the refusal of the Judge to submit the issues to a jury." Finally, we there said: "Whether the opinion of the District Court, on remand, was correct remains to be determined in this appeal." That time has now come.

First, however, because of the decision below and the posture of this case, we consider the issue of whether patentability involves a question of law or a question of fact. Of course our real concern is not with patentability, a word which is dependent upon other factors and merely describes an end result. Patentability follows, as the night

follows the day, if the three requisites of patentability are present; these are invention, novelty, and utility. Harvey v. Levine, 322 F.2d 481, 483 (C.A. 6); Maytag Co. v. Murray Corp. of America, 318 F.2d 79, 81 (C.A. 6); Allied Wheel Products v. Rude, 206 F.2d 752, 760 (C.A. 6). To paraphrase these requisites more in terms of the statute, to receive a patent there must be an invention which is new and useful. 35 U.S.C. § 101. Thus our real concern is with invention, its meaning, and whether it poses a question of law or fact.

It is virtually a practical impossibility to define adequately that abstraction which we call invention. Long ago the Supreme Court said: "The truth is the word cannot be defined in such a manner as to afford any substantial aid in determining whether a particular device involves an exercise of the inventive faculty or not. In a given case we may be able to say that there is present invention of a very high order. In another we can see that there is lacking that impalpable something which distinguishes invention from simple mechanical skill." McClain v. Ortmayer, 141 U.S. 419, 427, 12 S.Ct. 76, 78, 35 L.Ed. 800. This Court consistently has echoed this view. Harvey v. Levine, supra, 322 F.2d at 485; Coats Loaders & Stackers, Inc. v. Henderson, 233 F.2d 915, 921 (C.A. 6); Westinghouse Elec. & Mfg. Co. v. Powerlite Switchboard Co., 142 F.2d 965, 966 (C.A. 6).

Judge Learned Hand concluded that in the final analysis the test of invention called for a subjective determination. Kirsch Mfg. Co. v. Gould Mersereau Co., 6 F.2d 793, 794 (C.A. 2). Judge Frank said that "a decision as to whether or not a thing is an invention is a 'value' judgment." Picard v. United Aircraft Corp., 128 F.2d 632, 639 (C.A. 2) (concurring opinion). And another court said "[i]t is a matter of feeling rather than of logic." Warren Telechron Co. v. Waltham Watch Co., 91 F.2d 472, 473 (C.A. 1).

■ In spite of the difficulty in defining invention, still we must have objective references and a place from which to start. For this we turn to the statute, which provides that a patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Telescoped, the test is whether the device would have been obvious to one skilled in the art. Maytag Co. v. Murray Corp. of America, supra, 318 F.2d at 81; Firestone v. Aluminum Co. of America, 285 F.2d 928, 930 (C.A. 6); Aluminum Co. of America v. Sperry Products, Inc., 285 F.2d 911, 917 (C.A. 6), cert. denied, Firestone v. Aluminum Co. of Amer., 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87.

■ From this it may be said that invention is synonymous with unobviousness. Thus to say that a device lacks invention and that it is obvious is to state the same legal proposition in two ways. Application of Jacoby, 309 F.2d 513, 516, n. 3 (C.C.P.A.). While the use of obviousness does not begin to solve the problem of application, at least it gives us a touchstone for the contextual meaning of invention.

We now turn to consider whether invention, or unobviousness, poses a question of law or of fact. At the risk of understatement, this is a question fraught with complexities, and one which has caused some courts recently to engage in extensive analysis. E. g., Armour & Co. v. Wilson & Co., 274 F.2d 143 (C.A. 7) (separate opinion of Chief Judge Hastings); Bergman v. Aluminum Lock Shingle Corp. of America, 251 F. 2d 801 (C.A. 9) (concurring opinion of Judge Pope).

In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U. S. 147, 71 S.Ct. 127, 95 L.Ed. 162, the Supreme Court held that it is a question of law whether the proper standard of invention has been applied. This case makes it clear that what we are con-

cerned with here is a matter of statutory construction; that is, interpreting the statute to draw from it the proper criteria for what constitutes invention. Statutory construction, of course, is a question of law. Armour & Co. v. Wilson & Co., supra, 274 F.2d at 156.

In practice, statutory construction is statutory application. This necessitates the existence of a factual basis to which the law is applied. Thus invention, preliminarily, involves questions of fact.

Therefore, to answer the question posed at the outset, invention is a question of law. However, the legal standard is addressed to a factual content which consists necessarily of questions of fact. This is the view which most courts, especially in recent years, have taken. Tatko Bros. Slate Co. v. Hannon, 270 F.2d 571 (C.A. 2), cert. denied, 361 U. S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185; Houston Oil Field Material Co. v. Claypool, 269 F.2d 134 (C.A. 5); Armour & Co. v. Wilson & Co., supra; Bergman v. Aluminum Lock Shingle Corp. of America, supra; Blish, Mize and Silliman Hardware Co. v. Time Saver Tools, Inc., 236 F.2d 913 (C.A. 10); Application of Sporck, 301 F.2d 686 (C.C.P.A.).

As applied to a patent case, this view was best expressed as follows:

"The conflict between the statement that the question of invention is one of fact and the almost innumerable instances in which the courts have dealt with it as though it were one of law can only be explained by breaking the question of patentable invention down into its component parts: what the prior art was and what the patentee did to improve upon it, and then, whether what the patentee did is properly to be classified as an invention. The nature of the prior art and the nature of what the patentee did to improve upon it must always be questions of fact. The question of the name to be given to what was done by the patentee, whether it is to be called an invention over the prior art or whether it is not, is a question fundamentally of the meaning of the words used in the statute, and as such would seem to be a question of law." 1 Walker, Patents § 25, at 115 (Deller ed. Supp.1963, at 34).

Thus what we have in a patent case are three steps: First, a determination of what the prior art was; this involves factual questions. Secondly, there is a determination of what, if any, improvement the patentee has made over the prior art; this will usually turn on expert testimony and therefore is a question of fact. The final step is to determine whether the improvement would have been obvious to one skilled in the art. This requires application of a legal criteria and therefore is a question of law, fully reviewable by the appellate court.

■ This Court on occasion has said that invention is a question of fact. Maytag Co. v. Murray Corp. of America, 318 F.2d 79, 81 (C.A. 6); Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corp., 298 F.2d 538, 540 (C.A. 6); Cold Metal Products Co. v. E. W. Bliss Co., 285 F.2d 244, 248 (C.A. 6), cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235. To the extent that the first two steps in the determination of invention involve questions of fact, we think these prior cases are not inconsistent with what we presently hold to be the correct rule. Furthermore, this Court, prior to the above-cited cases, recognized and accepted the proper approach to the problem when it held that "the question of invention is a question of law," but questions of fact may exist which affect the conclusion of law. National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224, 238 (C.A. 6), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022.

This, we hold, states the proper view. The essential point is that regardless of how important factual issues are in a particular case, the appellate court should be free to give effect to the general legislative standard. The scope of appellate

review would be restricted if invention is treated as a question of fact.

Having decided that, although the ultimate question of invention is a question of law, there are some questions of fact to be decided, how does this affect the present case and plaintiff's right to a jury trial?

■ Plaintiff first contends that since its complaint presented legal issues involving factual questions, it was entitled to a jury trial in light of the Supreme Court decision in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894. Defendant concedes that the District Court would have erred in its refusal of a jury trial if the Dairy Queen decision had come down prior thereto. On the remand, the District Court considered the Dairy Queen case and concluded that the plaintiff had not been prejudiced "as a result of the striking of its demand for jury trial." 214 F.Supp. 704, 707. The District Court held that the evidence had been so clear and overwhelming that there were no factual issues to be resolved and the patents were invalid as a matter of law. In effect, the Court said it would have been required to direct a verdict.

We are of the opinion that if the District Court was correct in these initial holdings then the subsequent decision in Dairy Queen would not require a new trial before a jury.

Aside from the Dairy Queen case, plaintiff makes the argument that if there were factual issues to be resolved then it is entitled to have the case reversed and remanded for a jury trial regardless of the weight of the evidence. In support of this proposition, plaintiff cites a few cases from the Fourth Circuit, particularly Peterson v. Sucro, 93 F.2d 878, 101 F.2d 282 (C.A. 4). Even assuming that represents the law in the Fourth Circuit, we are of the opinion that the better reasoned view is to the contrary.

The prevailing, and we think the more logical view, is that denial of a jury trial is not reversible error if the court could

have directed a verdict, and there was no evidence to go to the jury. Klein v. Burns Mfg. Co., 245 F.2d 269 (C.A. 2); Leimer v. Woods, 196 F.2d 828 (C.A. 8); Tanimura v. United States, 195 F.2d 329 (C.A. 9). This would seem to follow logically from the rule, also applicable in patent cases, that if the evidence is clear the judge may direct a verdict or enter a summary judgment. Klein v. Burns Mfg. Co., supra; Berkeley Pump Co. v. Jacuzzi Bros., 214 F.2d 785 (C.A. 9); Packwood v. Briggs & Stratton Corp., 195 F.2d 971 (C.A. 3), cert. denied, 344 U.S. 844, 73 S.Ct. 61, 97 L. Ed. 657; Walker v. General Motors Corp., 225 F.Supp. 350 (N.D.Cal.).

Thus the question posed on this appeal is whether "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." Brady v. Southern Ry. Co., 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239, and further, that such conclusion is the one reached by the District Court.

■ We now come to the patented device which after all is the subject matter of this case. At the outset we take note of two well-established principles. The first is that in considering the question of obviousness, we must view the prior art from the point in time just prior to when the patented device was made. Many things may seem obvious after they have been made, and for this reason courts should guard against slipping into use of hindsight. We must be careful to "view the prior art without reading into that art the teachings of appellant's invention." Application of Sporck, 301 F.2d 686, 689 (C.C.P.A.).

■ Secondly, we also recognize that a presumption of validity attaches to a patent once it has been issued by the patent office. 35 U.S.C. § 282; Aluminum Co. of America v. Sperry Products, Inc., 285 F.2d 911, 916 (C.A. 6), cert. denied, 368 U.S. 890. This is only proper because of the complexities of patent law and the expertise of the patent office. See Williams Mfg. Co. v. United Shoe

Mach. Corp., 121 F.2d 273, 277 (C.A. 6), cert. denied, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537. However, the large number of patents declared invalid by the courts bear telling witness to the fact that this presumption is in no way conclusive. The presumption of course is weakened if applicable prior art has not been considered by the patent office. Harvey v. Levine, 322 F.2d 481, 484 (C. A. 6); Aluminum Co. of America v. Sperry Products, Inc., supra.

Claims 2 and 3 of patent 938, which are in issue, relate to the rubber spacer sleeve which fits between the shock absorber and the coil spring. In the statutory language, it must be determined if this would have been obvious to one skilled in the art.

■ Prior art French Patent 1,044,-393, Italian Patent 467,071, and British Patent 435,361, all relating to automobile suspension devices, each demonstrate a coil spring surrounding a tubular shock absorber. Parenthetically, there is no question but that foreign patents can serve just as effectively to negative invention. Allied Wheel Products v. Rude, 206 F.2d 752, 759 (C.A. 6). These prior patents make it clear that the disposition of a shock absorber within a spring for a vehicular suspension device is old.

The claims in issue, however, relate to the rubber spacer sleeve. This is used primarily to prevent the spring from banging against the shock absorber, thereby causing both noise and damage to the shock and spring. Farmer Patent 2,344,858 discloses a rubber sleeve between a coil spring and a tubular metallic element. This was not cited as a reference by the patent office.

■ The Farmer Patent concerned a brake cylinder, and it is certainly true, as plaintiff contends, that a patent cannot be invalidated by prior patents from a non-analogous art. Allied Wheel Products v. Rude, supra; Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc., 111 F.2d 239 (C.A. 6). However, assuming, without deciding, that the Farmer Patent is from a non-related art, it does not necessarily follow that its disclosures may be ignored. Allied Wheel Products v. Rude, supra, 206 F.2d at 756; In re O'Connor, 34 C.C.P.A. 1055, 161 F.2d 221, 222.

There was testimony that it would have been obvious to insert a rubber sleeve to prevent the metal-to-metal contact and resultant noise of the spring banging against the shock absorber. In other words, the use of rubber to prevent metal-to-metal contact is a well known principle. The Farmer Patent, assuming it is from a non-related art, could still be used as "illustrative of the adaptation of well known scientific principles to practical uses." Application of Mariani, 37 C.C.P.A. 740, 177 F.2d 293, 295. Or, as this Court has said: "While it is true that patents have frequently been sustained where mechanical expedients were derived from non-analogous arts and so not obvious, this has not been true where what was borrowed was a common and generally known expedient in mechanical arts." Detachable Bit Co. v. Timken Roller Bearing Co., 133 F. 2d 632, 637 (C.A. 6). See Detroit Stoker Co. v. Brownell Co., 89 F.2d 422, 424 (C.A. 6).

■ We are of the opinion that the use of a rubber sleeve to prevent metal-to-metal contact was an obvious mechanical expediency, and cannot rise to the level of invention. Enterprise Mfg. Co. v. Shakespeare Co., 106 F.2d 800, 803 (C.A. 6), cert. denied, 309 U.S. 665, 60 S.Ct. 590, 84 L.Ed. 1012.

■ Plaintiff contends that invention is not limited to the rubber spacer sleeve, but that it lies in plaintiff's unique combination of admittedly old elements. It is of course true that old elements can be combined to create a patentable device. Sparton Corp. v. Evans Products Co., 293 F.2d 699, 704 (C.A. 6), cert. denied, 368 U.S. 967, 82 S.Ct. 439, 7 L. Ed.2d 395; Cold Metal Process Co. v. Republic Steel Corp., 233 F.2d 828, 838–839 (C.A. 6); see Reiner v. I. Leon Co., 285 F.2d 501, 503 (C.A. 2). Obviously, however, the combination of old elements must possess invention, which, for the

reasons herein set forth, we do not find in the instant case.

■ We conclude that, in view of the prior art, what plaintiff did would have been obvious to one skilled in the art. Therefore, Claims 2 and 3 of Patent 938 are invalid for lack of invention. See United Parts Mfg. Co. v. Lee Motor Products, Inc., 266 F.2d 20 (C.A. 6).

■ Before continuing, it may be well to pass upon two other points raised by the plaintiff. First, plaintiff emphasizes the great commercial success of its device, saying that this is evidence of a new and useful invention. Defendant responds by pointing to plaintiff's extensive utilization of advertising. In any event, it seems clear that in a close case commercial success may be a relevant consideration. Aluminum Co. of America v. Sperry Products, Inc., 285 F.2d 911, 923 (C.A. 6), cert. denied, Firestone v. Aluminum Co. of Amer. 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87; National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224, 239 (C.A. 6), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022. However, this Court has said many times that if a device lacks invention then no amount of commercial success can validate the patent. Harvey v. Levine, 322 F.2d 481, 486 (C.A. 6); Aluminum Co. of America v. Sperry Products, Inc., supra; Cold Metal Products Co. v. E. W. Bliss Co., 285 F.2d 244, 248 (C.A. 6), cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235.

■ Plaintiff also points to the fact that its patents have been declared valid by a number of courts. In support of this, plaintiff puts forward a number of consent decrees which resulted from infringement suits brought by plaintiff against various small companies. We are of the view that these consent decrees are in no sense controlling. In a similar situation, this Court said "the consent decrees are not convincing. * * the purchase of peace * * * is often a wise course for the small manufacturer." Kay Jewelry Co. v. Gruen National Watch Case Co., 40 F.2d 600, 604

(C.A. 6). See also, Picard v. United Aircraft Corp., 128 F.2d 632, 641–642 (C.A. 2) (Frank, J., concurring), cert. denied, 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524.

It is to be noted that when these patents did go to trial they were declared invalid. Monroe Auto Equipment Co. v. Superior Industries, Inc., 220 F.Supp. 941 (S.D.Cal.).

The District Court, in the instant case, also held that Claims 2 and 3 of patent 938 were anticipated by a prior device and therefore lacked novelty and were invalid under 35 U.S.C. § 102(a).

■ To digress momentarily to discuss some ground rules, anticipation belongs with novelty. To be patentable, a device must possess novelty as well as invention and utility. Novelty does not exist if the patented device has been anticipated by a prior device, whether patented or not. In order to have anticipation, it is necessary that all of the elements of the patented device, or their equivalents, be found in a single prior device where the elements do substantially the same work in substantially the same way. Firestone v. Aluminum Co. of America, 285 F.2d 928, 930 (C.A. 6); Allied Wheel Products v. Rude, 206 F.2d 752, 760 (C.A. 6); 1 Walker, Patents § 47, at 255 (Deller ed.). In other words, a device lacks novelty if there is, or has been, a substantially identical prior device.

■ We must be careful to make the distinction between novelty and invention in relation to anticipation. Novelty and invention are two separate tests, and anticipation belongs only with novelty. This Court has pointed out that some courts tend, mistakenly, to use anticipation as an equivalent of invention. Allied Wheel Products v. Rude, supra, 206 F.2d at 761; Firestone v. Aluminum Co. of America, supra. See also, Borkland v. Pedersen, 244 F.2d 501, 502 (C.A. 7). Thus it is incorrect to say that a patent lacks invention because it is anticipated. If it is anticipated it lacks novelty; it lacks invention if it would have been obvious.

■ From this it should be clear that even though the prior art may not anticipate the patent in question, the disclosures of the prior art may negative invention. Harvey v. Levine, 322 F.2d 481, 483 (C.A. 6); Allied Wheel Products v. Rude, supra, 206 F.2d at 760; Leishman v. General Motors Corp., 191 F.2d 522, 530 (C.A. 9); Seymour v. Ford Motor Co., 44 F.2d 306, 309 (C.A. 6). That is, a prior device may not be substantially identical to the patented device and therefore cannot anticipate; however, it may be that in the light of this prior device the patented device would have been obvious.

■ In order to anticipate, a prior device, though it does not have to be patented, must have been reduced to use and successfully performed. National Latex Products Co. v. Sun Rubber Co., 274 F. 2d 224, 233 (C.A. 6), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022; Stearns v. Tinkor & Rasor, 220 F.2d 49, 56 (C.A. 9), cert. denied, 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741; Simmons v. Hansen, 117 F.2d 49, 51 (C.A. 8); Oliver Machinery Co. v. Gellman, 104 F. 2d 11, 13 (C.A. 6); Gaiser v. Linder, 45 C.C.P.A. 846, 253 F.2d 433. It must have been a public use, although it need not be a commercial use. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 384, 48 S.Ct. 380, 72 L.Ed. 610. Sometimes the word experimental is used in contrast to public use. However, in certain situations, the difference between a public use and an experimental use is not so clear as to admit of this being a wholly adequate standard. Furthermore, courts have found sufficient reduction to use even though what was done would, by ordinary standards, be called experimental. E. g., Picard v. United Aircraft Corp., 128 F.2d 632 (C. A. 2), cert. denied, 317 U.S. 651, 63 S. Ct. 46, 87 L.Ed. 524. Suffice it to say that there must have been a reduction to use which was, to some extent at least, a public use.

With these principles in mind, we turn to consider whether claims 2 and 3 of patent 938 lacked novelty because antici-

pated by a prior device. We reemphasize the fact these claims relate to the non-metallic spacer sleeve between the shock absorber and the coil spring. We note that the patent date of 938 is May 6, 1954.

From the record the following facts are clearly established: in 1953, Fred Knoedler, President of Knoedler Manufacturers and holder of Patent 2,432,544 relating to a tractor seat support, put a coil spring around a standard shock absorber and installed such a device on his own car. This proved unsatisfactory because of the noise caused by the spring banging against the shock absorber. To remedy this, Knoedler put first a rubber and then a plastic sleeve around the shock absorber to prevent the spring from banging against it. Thus satisfied, Knoedler had sales literature prepared for the purpose of marketing his device under the name of a Hydro Shock Booster Spring. This literature was subsequently distributed, to a limited extent at least, by Knoedler and his son.

On September 1, 1953, Knoedler, through his attorneys, filed a patent application on this device. This application indicates a non-metallic sleeve around the shock absorber. This application was allowed, but a patent was never issued because of the failure to pay the final fee.

Finally, it is established that Knoedler made up six sets of these springs which were installed on his two cars, and on cars belonging to his son, two employees, and a mechanic. The springs operated successfully, and we hold that this constituted a sufficient reduction to public use.

■ These facts clearly demonstrate that the Knoedler device was prior to patent 938, that it consisted of substantially the same elements operating in the same manner, and that it was sufficiently reduced to a public use. We hold that these facts establish anticipation and therefore claims 2 and 3 of patent 938 are invalid for lack of novelty. See Corona Cord Tire Co. v. Dovan Chem-

ical Corp., 276 U.S. 358, 48 S.Ct. 380; Brush v. Condit, 132 U.S. 39, 10 S.Ct. 1, 33 L.Ed. 251; Coffin v. Ogden, 18 Wall. 120, 85 U.S. 120, 21 L.Ed. 821.

Plaintiff makes much of the fact that Knoedler abandoned his device. The answer to this contention is that if the prior device has been reduced to practice then it can negative novelty even though it is subsequently abandoned. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380; Rosaire v. Baroid Sales Div., National Lead Co., 218 F.2d 72 (C.A. 5), cert. denied, 349 U.S. 916, 75 S.Ct. 605, 99 L.Ed. 1249; Picard v. United Aircraft Corp., 128 F.2d 632 (C.A. 2), cert. denied, 317 U.S. 651, 63 S.Ct. 46. As the Supreme Court said in the first-cited case: "It is doubtless true that Kratz by his course in respect to his discovery as to the use of D.P.G. has abandoned any claim as against the public for a patent, but that is a very different thing from saying that it was abandoned as against a subsequent discoverer or patentee." 276 U.S. at 384–385, 48 S.Ct. at 388.

Similarly, plaintiff argues that Knoedler's abandoned patent application cannot be used to anticipate plaintiff's patent. It is true that an abandoned patent application cannot be used in itself to anticipate; however, it can, as here, be used as evidence of the prior device. U. S. Blind Stitch Mach. Corp. v. Reliable Mach. Works, 67 F.2d 327, 328 (C.A. 2); Curtiss-Wright Corp. v. Link Aviation, Inc., 182 F.Supp. 106, 118 (N. D.N.Y.); Application of Schlittler, 43 C.C.P.A. 986, 234 F.2d 882, 885.

We come now to plaintiff's patent 235 of which claim 14 is the only claim in suit. Claim 14 relates to the combination shock absorber and overload spring assemblies being installed in an angular or "sea-leg" fashion in the rear suspension of an automobile. The District Court held this claim invalid for lack of invention.

The so-called sea-leg mounting is old and well known in the art. In the S.A.E. Journal for May, 1949, it was noted: "most cars have adopted what is known as the sea-leg mounting for the rear shock absorbers." See Monroe Auto Equipment Co. v. Superior Industries, Inc., 220 F.Supp. 941, 944 (S.D.Cal.).

Italian Patent 466,870 discloses a shock absorber and spring arrangement mounted in a sea-leg fashion. French Patent 1,044,393 and Italian Patent 467,071 disclose a shock absorber disposed within a coil spring and mounted in sea-leg fashion. U. S. Patent 2,159,203 discloses a standard shock absorber in a sea-leg mounting.

Plaintiff contends that in these prior art patents the suspension devices perform in a different manner or serve a different purpose than in patent 235 and therefore they cannot be used to anticipate. This might be true if we were concerned here with novelty. However, as we hereinabove have pointed out, the fact that none of these prior art references are so like patent 235 that they could negative novelty does not mean that they may not negative invention.

As before, plaintiff contends that it is the unique combination of this particular suspension system with this particular mounting which constitutes invention. As we said a combination of old elements may create a patentable device, provided the quality of invention is present. We find no such quality here. Plaintiff's use of the sea-leg mounting was a mere expediency and not an exercise of the inventive faculty.

We conclude, then, that plaintiff's improvement over the prior art would have been obvious to one skilled in the art, and therefore claim 14 of patent 235 is invalid for lack of invention.

Furthermore, we hold that claim 14 of patent 235 is invalid for lack of novelty as it was anticipated by the Knoedler device discussed above. In addition to testimony, there was documentary evidence that Knoedler's suspension device was mounted in a sea-leg fashion. Plaintiff attempts to overcome this by saying

that it was not reduced to practice. As we have already pointed out, it is clear that Knoedler made six sets of his device which were put on different cars and operated successfully.

In addition, one of the six sets was given to one John Truesdon, an employee of Knoedler, who installed the set in a sea-leg mounting. In August, 1953, Truesdon sold his car with the Knoedler device still mounted in the same way. Since this sale was more than a year prior to the filing date of patent 235, claim 14 of said patent is invalid under 35 U.S.C. § 102(b).

We hold that these clearly established facts constitute anticipation and therefore claim 14 of patent 235 is invalid for lack of novelty.

The District Court also held, and defendant has argued in this Court, that the pertinent claims of both patents were also invalid under Muncie Gear Works, Inc. v. Outboard Marine & Mfg. Corp., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171. The so-called Muncie Gear doctrine is that a claim which adds new matter to the original application is invalid if filed more than one year after public use of the device. If the later claim is only a clarification or refinement of matter which has been sufficiently disclosed in the original application or drawing then it is allowable. As a practical matter, new claims are constantly being added to an application, sometimes more than one year after the device has gone into public use. Thus the question is whether there is anything in the prior disclosures which will support the subsequent claim, or does the claim broaden or change the original invention. This Court has discussed and applied the Muncie Gear doctrine in National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224 (C.A. 6), cert. denied, 362 U. S. 989, 80 S.Ct. 1078; Coats Loaders & Stackers, Inc. v. Henderson, 233 F.2d 915 (C.A. 6); Cold Metal Process Co. v. Republic Steel Corp., 233 F.2d 828 (C.A. 6), cert. denied, 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86.

Since, however, we have held the relevant claims of these two patents invalid for lack of invention and lack of novelty, we do not deem it necessary to discuss the issue of late claiming which might be posed by this case.

Similarly, because of the invalidity, we do not reach the question of infringement. Cold Metal Products Co. v. E. W. Bliss Co., 285 F.2d 244, 250 (C.A.6), cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235; Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801, 804 (C.A.9).

Throughout our disposition of this case we have not been unmindful of plaintiff's right to a jury trial. We are of the opinion, however, that the facts were clearly established and that there were no factual issues to be resolved by a jury. Therefore plaintiff was not prejudiced by the denial of a jury trial.

For the reasons hereinabove discussed, the judgment of the District Court is affirmed.