**POPCORN-IN-OIL COUNCIL, INC.,**
**Plaintiff-Appellant,**

v.

**WYNDALL'S SUPER MARKET, INC.,**
**Defendant-Appellee,**

and

**Hesmer Foods, Inc., Intervener Defendant-**
**Appellee.**

**No. 16115.**

United States Court of Appeals
Sixth Circuit.

Jan. 5, 1966.

Edmund C. Rogers, St. Louis, Mo. (Kingsland, Rogers, Ezell, Eilers & Robbins, John T. Rogers, St. Louis, Mo., on the brief; J. Ross Cheshire, Nashville, Tenn., of counsel), for appellant.

Wells T. Lovett, Owensboro, Ky., for appellees.

Before EDWARDS, Circuit Judge, and THORNTON * and TAYLOR **, District Judges.

---

\* Honorable Thomas P. Thornton, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

\*\* Honorable Robert L. Taylor, Chief Judge, U. S. District Court for the Eastern District of Tennessee, sitting by designation.

EDWARDS, Circuit Judge.

In this case the plaintiff-appellant, Popcorn-in-Oil Council, Inc., has sought the aid of the United States Courts, under 35 U.S.C. § 271 and § 281, to restrain infringement of a patent. The original and intervening defendants entered formal denial of infringement and counterclaimed, under 28 U.S.C. § 2201, seeking damages and attacking the validity of the patent.

The patent at issue was granted to one Martin [1] for a claimed invention consisting of filling a container (glass jar or can, etc.) with popcorn kernels and "flowable popping oil." The claims did not specify a particular oil or oils, but the specification indicates that the preferred oil is a mixture of soybean oil and peanut oil.

The record before the Patent Office indicates that because of the existence of two prior packaging patents, (the Musher and the Nairn patents) which contemplated packaging grains with oils, the Patent Office refused the Martin application until it was amended to add reference to "the cohesive flowable mass" of popcorn kernels in oil.

The two claims of the Martin patent which are disputed herein then read:

"1. A food package comprising: a container; a mass of popcorn kernels in said container and substantially filling said container; and popping oil in said container filling the voids between said popcorn kernels, whereby the popcorn kernels and popping oil can be simultaneously poured from the container as a cohesive flowable mass.

\* \* \* \* \* \*

"4. A food package comprising: a container; a mass of popcorn kernels in said container substantially filling said container, said popcorn kernels being of substantially uniform size such that they will pass through a $^{20}\!/_{64}$ of an inch mesh screen but not through a $^{13}\!/_{64}$ inch mesh screen; and popping oil in said container filling the voids between said popcorn kernels and immersing said popcorn kernels therein, whereby the popcorn kernels and popping oil can be simultaneously poured from the container as a cohesive flowable mass."

At trial where the validity of the patent was hotly contested, the District Judge entered a lengthy finding of fact as to similar, or somewhat similar commercial uses which preceded plaintiff-appellant's patent and held as follows:

"The Martin patent is therefore invalid for failure to define invention over prior art and knowledge. 35 U.S.C.A., §§ 102 and 103."

Before this court plaintiff-appellant argues the presumption of validity of this patent, the convenience of its package, its commercial success, and that both novelty and invention should be found in Martin's addition of "flowable" oil to a popcorn package because of the state of the prior art. This state plaintiff-appellant describes thus:

"[P]rior developers tried packaging popcorn kernels and a solid popping oil in a jar. A solid popping oil would 'stand away' from the corn kernels, and would not be made rancid by them. This notion was so firmly entrenched in the thinking, that prior to Martin's invention, no attempts were made to package popcorn kernels in a liquid popping oil, because everyone was convinced such a package would not work. It was believed that the corn kernels would soften and become mushy within a short period of submersion in the liquid oil. It was believed that the package would have an impossibly short shelf life. It was believed that the product would become rancid. And it was believed that the popcorn kernels and liquid oil would not flow from the jar in proper proportions. It was felt that the oil would first pour out, followed by the corn kernels, so that one using half

1. Plaintiff-appellant is assignee of patentee Martin.

the jar's contents would have all the oil and half the corn, whereas when he used the next half, he would have half the corn and little or no oil left."

In fact, the testimony before the United States District Court indicated that the Martin patent did not result in the kernels becoming mushy, or failing to pop, and did result in the kernels and oil pouring as "a cohesive flowable mass."

Also at trial before the United States District Court, the record was introduced which had been made before the Patent Office, as was also the record of the findings of fact and conclusions of law and judgment in an interference suit before the United States District Court for the Middle District of Georgia (Rose Kist Popcorn Co., Inc. v. Rose Super Market, Inc., Civil Action No. 401).

These records indicate that the Patent Office issuance of the Martin patent and the Georgia United States District Court's judgment as to its validity were based upon consideration of certain prior patents and a patent application of one William Clark as to which Martin's patent was awarded priority. The two patents primarily considered in these two proceedings are germane to our decision and warrant description.

The Musher patent was a patent for packaging cereals and grains in edible fats in proportions which were suitable for immediate cooking. The patent made no specific reference to popcorn, but did refer to corn generally. And while it is clear that the patent generally described a combination which employed solid oils or fats, the third illustration given pertained to a can containing "a packaged composition of food material produced in accordance with the present invention where the composition is of more plastic or fluid character."

The other patent was the Nairn patent, which related to a preparation for coating popcorn. This patent employed "an edible oil" (corn oil, cottonseed oil and coconut oil were examples given) and specified quantities of salt, seasoning, flavoring and coloring, mixed with the oil and the popcorn kernels to form "a film over each kernel that inhibits change in the moisture content of the corn." The patent claimed that when the kernels were popped, popped corn uniformly salted, flavored and colored was provided.

As compared with the record just cited, the instant trial before the United States District Court for the Western District of Kentucky contained much additional evidence concerning the packaging of popcorn kernels with coconut oil prior to the Martin patent application. The District Judge's basic findings concerning this aspect of the prior art follow:

"Various oils such as coconut oil, cottonseed oil, peanut oil and soybean oil, along with various fats such as lard were well known as popping oils more than one year prior to the filing date of the Martin patent. The melting points or ranges of each of the various popping oils or fats referred to above, together with their other characteristics such as resistance to rancidity, shelf life and the like, were also well known more than one year prior to the filing date of the Martin patent.

"Containers enclosing a mass of popcorn kernels with coconut oil filling the voids between the kernels were known and publicly used in this country more than one year prior to the filing date of the Martin patent. The contents of such containers were transferable from the container to a popping vessel with the integrity of the oil-kernel mix being substantially maintained. Such transfer was accomplished by spooning the mix at temperatures below the melting point or range of coconut oil (approximately 76° F.) and was also accomplished by pouring at temperatures above the melting point of the coconut oil."

Other findings cited specific examples of manufacturers or distributors (Foster, Mangelsdorf, Norrell and Blevins) packaging popcorn kernels and coconut oil

prior to one year before the Martin patent application.

It is clear, however, that as to most of the examples cited above, the product was not flowable at ordinary room temperatures and it is this feature which plaintiff-appellant claims has produced maximum convenience and a very considerable economic success for plaintiff-appellant's product.

Testimony before the District Judge, however, indicated that in the spring of 1951 Foster did change from packaging popcorn kernels and coconut oil alone to an 80-20 mixture of coconut oil and peanut oil to achieve softness of the product so it could be easily removed. The record also discloses that the Gerber popcorn kit packaged both popcorn and a separate bottle of flowable oil in a commercial package. And in 1951 also (but after May 8, the date of the Martin patent application) William Clark, acting independently, started packaging popcorn kernels and cottonseed oil.

Also before the District Judge was expert testimony which indicated that preservatives to prevent rancidity came into use in 1950 and thereafter which extended the shelf life of the oils pourable at room temperature.

As to this feature the District Judge found:

> "While all of the known popping oils were available to the manufacturers of these early products, namely to Foster, Mangelsdorf, Clark and Blevins, coconut oil was chosen because, among other reasons, it was relatively cheap and had a longer 'shelf-life'. The subsequent popularity of other popping oils in popcorn-in-oil products was due, among other things, to the anti-oxidant additives which became available in the early 1950s, and which prolonged the 'shelf-life' of all popping oils."

■ The findings of fact of the District Judge in a patent case are, of course, binding upon us, unless clearly erroneous. Toledo Scale Corp. v. Westinghouse Electric Corp., 351 F.2d 173 (C.A.6, 1965). Graver Tank & Manufacturing Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949), rehearing granted, 337 U.S. 910, 69 S.Ct. 1046, 93 L.Ed. 1722 (1949), aff'd, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Maytag Company v. Murray Corp. of America, 318 F.2d 79 (C.A. 6, 1963). From what we have quoted or paraphrased from the record in this case, we think it clear that there is ample support for the District Judge's finding of fact and that they are not clearly erroneous.

■ The District Judge concluded that the presumption of validity accorded to the issuance of a patent by the Patent Office and to a judgment of validity by another United States District Court were not binding upon him because much additional evidence was presented before him which was not before the Patent Office or before the United States District Court for the Middle District of Georgia. In this we believe he is supported both by this record and by sound precedent. Monroe Auto Equipment Co. v. Heckethorn Manufacturing & Supply Co., 332 F.2d 406 (C.A.6, 1964), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964); Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049 (1937); Harvey v. Levine, 322 F.2d 481 (C.A.6, 1963).

As we have noted, the District Judge held the Martin patent invalid both because of lack of novelty (anticipation by prior use—35 U.S.C. § 102) and lack of invention (obviousness to others in the art—35 U.S.C. § 103). Limiting our decision to the two disputed claims of the Martin patent, we affirm on the second ground cited.

While we think that appellant at least arguably demonstrates that the Martin patent was not fully anticipated by reduction to practice or by commercial use, the sole feature of the patent which demonstrates novelty is the substitution of a flowable oil for coconut oil to achieve a more convenient result in use. The use of the flowable oils described by the Martin patent as popping oils was exceedingly well known in the art, both for

household use and in a commercially packaged combination (the Gerber popcorn kit). The package employed by the Martin patent, in all its features except substitution of a flowable oil, was anticipated by at least the four commercial packages of popcorn in coconut oil which we have referred to. And it is clear that two independent experiments were being made with the Martin substitute during 1951.

Judge Learned Hand, speaking long before Section 103 was adopted, defined invention thus:

> "An invention is a new display of ingenuity beyond the compass of the routineer, and in the end that is all that can be said about it. Courts cannot avoid the duty of divining as best they can what the day to day capacity of the ordinary artisan will produce. This they attempt by looking at the history of the art, the occasion for the invention, its success, its independent repetition at about the same time, and the state of the underlying art, which was a condition upon its appearance at all. Yet, when all is said, there will remain cases when we can only fall back upon such good sense as we may have, and in these we cannot help exposing the inventor to the hazard inherent in hypostatizing such modifications in the existing arts as are within the limited imagination of the journeyman. There comes a point when the question must be resolved by a subjective opinion as to what seems an easy step and what does not." Kirsch Manufacturing Co. v. Gould Mersereau Co., 6 F.2d 793, 794 (C.A. 2, 1925).

Last year (long after Section 103 was adopted) Justice Black reiterated this long-standing statement of the purpose of and limitations on the constitutional provision upon which our patent law is founded (Art. 1, § 8, cl. 8, United States Constitution).

> "But in rewarding useful invention, the 'rights and welfare of the community must be fairly dealt with and effectually guarded.' Kendall v. Winsor, 21 How. 322, 329 [16 L.Ed. 165] (1859). To that end the prerequisites to obtaining a patent are strictly observed, and when the patent has issued the limitations on its exercise are equally strictly enforced. To begin with, a genuine 'invention' or 'discovery' must be demonstrated 'lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art.' Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 92 [62 S.Ct. 37, 41, 86 L.Ed. 58] (1941); see Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153 [71 S.Ct. 127, 130, 95 L.Ed. 162] (1950); Atlantic Works v. Brady, 107 U.S. 192, 199–200 [2 S.Ct. 225, 230–231, 27 L.Ed. 438] (1883)." Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 230, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964).[2]

Section 103 itself provides:

> "§ 103. Conditions for patentability; non-obvious subject matter. A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which

2. Cf. Reiner v. I. Leon Co., 285 F.2d 501 (C.A. 2, 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961); Application of Palmquist, 51 C.C.P.A. (Patents) 839, 842–843, 319 F.2d 547, 550 (1963), overruled on other grounds, Application of Foster, 343 F.2d 980 (C.C.P.A.1965); Address by Judge Giles S. Rich, The Patent, Trademark and Copyright Research Institute Award Dinner, June 18, 1964, in The George Washington University Tenth Anniversary Issue.

the invention was made." 35 U.S.C. § 103.

In our review of the state of the art at the time of the Martin patent application, as revealed by the record, we believe that the District Judge had every reason to conclude that Martin's substitution of flowable popping oil for coconut oil in an identical type of package was an "obvious" development to anyone skilled in the art at the time and represented "a slight technological advance" rather than "invention." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 92, 62 S.Ct. 37, 86 L.Ed. 58 (1941). We therefore agree that claims one and four of the Martin patent (not the patent as a whole—see Felburn v. New York Central Railroad Co., 350 F.2d 416 (C.A.6, 1965)) are invalid because they do not meet the test of invention and the definition thereof in 35 U.S.C. § 103.

Affirmed as modified.