**NELMOR CORPORATION, Plaintiff-Appellee,**

v.

**JERVIS CORPORATION, Defendant-Appellant.**

**No. 16084.**

United States Court of Appeals
Sixth Circuit.

Jan. 7, 1966.

Clarence B. Zewadski, Detroit, Mich., Whittemore, Hulbert & Belknap, Detroit, Mich., William J. Morriss, Miller, Morriss & Pappas, Lansing, Mich., on brief, for appellant.

Max R. Kraus, Chicago, Ill., for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CONNELL *, District Judge.

WEICK, Chief Judge.

This case involves questions concerning the validity and infringement of Jacobson Patent No. 2,931,235 on a remote control rearview mirror commonly used on automobiles. The patent was assigned by the inventor to Jervis Corporation.

Nelmor Corporation, an alleged infringer, brought action in the District Court against Jervis for declaratory judgment that the patent was invalid and not infringed. Jervis counterclaimed for infringement of claims 2 and 20 of the patent and also for infringement of trademark and unfair competition.

Trial upon the merits was had in the District Court. Experts testified for each of the parties. Models of the patented, accused, and certain prior art devices were offered in evidence. The file wrapper from the Patent Office was also before the Court.

After hearing and considering the evidence, arguments and briefs of counsel the District Judge, in a well considered opinion which he adopted as findings of

---

1. Honorable James C. Connell, Chief Judge United States District Court, for the Northern District of Ohio, sitting by designation.

fact and conclusions of law, held that the entire patent was invalid for want of invention over the prior art and was directly anticipated element for element and function for function thereby. The Court further found that claims 2 and 20 of the patent were not infringed by Nelmor. The Court also found no infringement of trademark or unfair competition. The opinion of the District Court is reported in 229 F.Supp. 864, and a supplemental opinion in 229 F.Supp. 871.

Jervis has appealed only from the judgment of the Court holding the patent invalid and not infringed.

Both Jervis and Nelmor are suppliers of rearview mirrors to the automotive industry. The mirror is attached to either the left front fender or door of the car, and a handle with which the mirror is controlled or manipulated is located on the dashboard or inside the left door.

The District Court found utility and commercial success in the patented device from the fact that Jervis had produced and sold over two million mirrors under the Jacobson Patent.

The devices were described by the District Judge as follows.

"In the patented device, as well as that marketed by plaintiff, a handle is attached to a control member which rests in a socket, and the mirror [controlled member] is held against a single pivot, shaped as a ball, which allows universal movement. Three cables connect the control member to the mirror in such a manner that when the handle is manipulated corresponding movement is imparted to the rearview mirror. * * *

"The alleged novel feature of the patented device is the tightening of the cables or wires by the use of coil springs so as to keep each in a state of equal tension. These springs are referred to in the patent as 'resilient means.' The maintenance of equal tension upon all cables, defendant asserts, is novel because it renders the device completely 'stable.' A stable device lacks any tendency in itself to move from the position in which * * * [it] is placed."

The resilient means in the patented device is one coil spring around a so-called sliding pin which connects the handle to the mirror. It is positioned at the pivot point (mirror) and located in the center of the three cables. The coil spring pushes the pin outward and thereby imparts tension to the cables.

In Nelmor's device the mirror pivots on a stationary, rather than a sliding, pin. No springs are used on the pin. Tensioning of the cables is accomplished by placing a coil spring around each of the three cables at the end of the control member (handle). These springs pull the cables inward in the direction of the mirror.

It was not disputed that the elements or parts comprising the patented device were all old and found in the prior art. The District Judge determined that the amalgamation of the old parts was a mere aggregation which accomplished no new purpose or function. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938). He cited two patents which were not considered by the Patent Office, Chantraine, No. 387,930 (France) and Hoffman, No. 650,368 (Germany).

Chantraine dated back to 1908 and was a cable-operated remote controlled device designed for "universal movement." It used a ball and socket arrangement to hold the controlled member in place. The controlled member rested in the socket and was connected to the control member (handle) by a plurality of cables spaced from each other. It was necessary to maintain the cables in a tightened position, which was accomplished by stretching them on a fixed pulley. No springs were used in this patent but the cables were referred to as "stretched".

Hoffman, issued in 1937, for a remote controlled spotlight, was not cited by the Patent Office. This patent utilized the ball and socket structure of Chantraine,

but had only three cables. Tension was maintained by stretching the cables. No resilient means other than the stretching were used.

The most pertinent patent, however, was before the Patent Office, namely, Hunt, No. 433112 (British) issued in 1935. This patent was for improvements in automotive headlamps. The control and controlled members were connected by three cables maintained under tension by coil springs which encircled them at their ends and were adjacent to the controlled member (mirror). The District Court found that every element of claim 2 of Jacobson is contained in Hunt.

The Patent Office twice rejected Jacobson's application for patent on the ground that his device was unpatentable over Hunt. The Examiner was finally persuaded to allow the patent because of the claim then advanced that Hunt's device was unstable and not suitable for a rearview mirror. Jervis maintained this position until the last day of the trial of the case at bar when it was otherwise demonstrated by the use of a model. Jervis' expert witness finally admitted upon cross-examination that the spring 56 located at the center of the controlled member in Hunt could be adjusted so as to render the device stable in all positions. This demonstration and admission, in our judgment, was the turning point of the trial. It is very doubtful that the Patent Office would ever have issued the patent had it known that the claims of instability of Hunt, advanced by Jacobson, were incorrect.

Jervis distinguishes Hunt because of differences in the structure of the two devices. It points out that although Hunt has three cables, only two of them are used for moving the lamp, and the third one for focusing the bulb in the lamp. The trouble with this contention is that all three cables were connected to the front end of the reflector and at the rear end to the handle. If a rearview mirror were substituted in the place of the lamp, the operation would be the same. Furthermore, Hoffman disclosed three cables utilized for universal movement so that

Jacobson's use of three cables was not new.

The location of a single spring in Jacobson at the center of the pivot, in contrast to Hunt where springs were positioned away from center, does not, in our judgment, constitute invention. All three spring-tensioned cables in Hunt connect the control member (handle) with the controlled member (reflector) which may be adjusted and maintained stable in any universal position. The spring 56 tends to stabilize the Hunt device.

The fact that the patented device had utility and commercial success, while important in a doubtful case, does not entitle an inventor to a patent where invention is lacking. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Harvey v. Levine, 322 F.2d 481 (6th Cir. 1963).

Jervis contends that the findings adopted by the District Court were insufficient to support the judgment declaring the entire patent invalid. It maintains that the evidence at the trial was directed only to claims 2 and 20 of the patent and not to the entire patent. It points out that shortly after the original opinion was filed the District Judge substituted a new page 2 therein.

A review of the record indicates that the validity of the entire patent, and not merely claims 2 and 20, was in issue. This is unlike Popcorn-in-Oil Council, Inc. v. Wyndall's Super Market, Inc., 355 F.2d 372 (C.A. 6, 1966), decided January 5, 1966, where only two claims, and not the entire patent, were in issue. Although the evidence in the present case was directed principally to claims 2 and 20 and to the issue of infringement, there was also evidence from which the District Judge could and did declare the entire patent invalid. We think his findings of fact were adequate and were supported by substantial evidence. They were not clearly erroneous and hence are binding on us. Maytag Co. v. Murray Corp., 318 F.2d 79 (6th Cir. 1963). His conclusions

**926**

of law were correct. We find nothing improper in the trial Judge making a few changes in his opinion after it was filed, when minor inaccuracies were called to his attention. Copies of the substituted page were immediately sent to all counsel of record.

The District Court found that claims 2 and 20 of the patented device were not infringed by Nelmor's device. This Court in Maytag Co. v. Murray Corp., supra, at page 83, stated:

"The question of infringement is generally regarded as a question of fact. Hamilton Mfg. Corp. v. Toledo Guild Products, 210 F.2d 237, 238, C.A. 6; Aluminum Co. of America v. Thompson Products, Inc., 122 F.2d 796, 799, C.A. 6. Accordingly, upon review of the trial court's determination of no infringement, the clearly erroneous rule, Rule 52(a), F.R.C.P., is applicable."

The District Court found that the basic difference between the patented and accused devices was in the location of the resilient means. The patented device has one centrally located spring, while Nelmor's device utilizes springs located at the end of each of the three cables. Jervis argues that the patent in suit covers the location of springs at the ends of the cables as the description in the patent only requires the force to be located on the pivot point, not that the spring be so located. Jervis in essence contends that neither claim, 2 or 20, specifies the location of the resilient means.

The Jacobson patent was in a heavily occupied field. The claims of a patent in a crowded art must be restricted to the specific structure described in the specifications and drawings. Cincinnati Milling Machine v. Turchan, 208 F.2d 222 (6th Cir. 1953).

When the two structures are compared it cannot be said that the District Court's findings with respect to infringement were unreasonable and not supported by the evidence.

Affirmed.