**HOLWIN CORPORATION, Plaintiff,**

v.

**PENT ELECTRIC COMPANY, Inc.,**

**Defendant.**

**Civ. A. No. 3588.**

United States District Court
W. D. Michigan, S. D.

April 17, 1967.

92

James R. McKnight, Chicago, Ill., and Joseph A. Cassese, Detroit, Mich., for plaintiff.

Roy A. Plant, Battle Creek, Mich., Ira Milton Jones, Milwaukee, Wis., and Peter S. Boter, Holland, Mich., for defendant.

KENT, Chief Judge.

This is an action for infringement of Patent 2,460,636 issued to Charles M. Holloway, President of the plaintiff corporation. The patent in suit relates to hole-mounted rubber light sockets for refrigerators. The defenses asserted include lack of infringement of the patent and invalidity of the patent by reason of prior public use and prior art that anticipated the alleged invention. The action is instituted under the provisions of Title 35 U.S.C.A. § 271, which provides in part as follows:

"(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

Under Title 35 U.S.C.A. § 282, a duly issued patent is presumed to be valid. However, in order to meet the requirements for validity the device must comply with the provisions of 35 U.S.C.A. § 101:

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

In other words, there must be invention. The product must be novel or as the statute states "new" and the product must be useful. However, the provisions of 35 U.S.C.A. § 102 are also applicable:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented, or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

"(e) invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, * * *."

The final statute having a bearing on the validity of the patent here allegedly infringed is 35 U.S.C.A. § 103 relating to nonobviousness—

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In Bobertz v. General Motors Corporation, 228 F.2d 94 (C.A.6, 1955), at page 99, the Court of Appeals for this Circuit had the following to say about what constitutes invention—

"The Court of Appeals for the Seventh Circuit, in Associated Plastics Companies v. Gits Molding Corporation, 182 F.2d 1000, 1005, has well said: 'A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display invention more ingenuity than the work of a mechanic skilled in the art. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee. The primary purpose of our patent system is not reward of the individual but the advancement of the arts and sciences. Its inducement is directed to disclosure of advancement in knowledge which will be beneficial to soci-

ety; it is not a certificate of merit, but an incentive to disclosure.'"

In discussing Title 35 U.S.C.A. § 103, the Court said in Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (C.A.6, 1964)—

"From this it may be said that invention is synonymous with unobviousness. Thus to say that a device lacks invention and that it is obvious is to state the same legal proposition in two ways. Application of Jacoby, 309 F.2d 513, 516, n. 3 [50 CCPA 734]. While the use of obviousness does not begin to solve the problem of application, at least it gives us a touchstone for the contextual meaning of invention."

Further at page 411, the Court says:

"Therefore, to answer the question posed at the outset, invention is a question of law. However, the legal standard is addressed to a factual content which consists necessarily of questions of fact. * * *."

"Thus what we have in a patent case are three steps: First, a determination of what the prior art was; this involves factual questions. Secondly, there is a determination of what, if any, improvement the patentee has made over the prior art; this will usually turn on expert testimony and therefore is a question of fact. The final step is to determine whether the improvement would have been obvious to one skilled in the art. This requires application of a legal criteria and therefore is a question of law, fully reviewable by the appellate court."

The Court says further at page 412:

"At the outset we take note of two well-established principals. The first is that in considering the question of obviousness, we must view the prior art from the point in time just prior to when the patented device was made.

* * * Secondly, we also recognize that a presumption of validity attaches to a patent once it has been issued by the patent office. (citations omitted) * * * However, the large number of patents declared invalid by the courts bear telling witness to the fact that this presumption is in no way conclusive."

At page 414 the Court discusses the effect of commercial success as evidence of inventiveness.

"In any event, it seems clear that in a close case commercial success may be a relevant consideration. (citations omitted). Howevre, this Court has said many times that if a device lacks invention then no amount of commercial success can validate the patent."

And finally in dealing with novelty and invention, at page 414 and 415, the court says:

"We must be careful to make the distinction between novelty and invention in relation to anticipation. Novelty and invention are two separate tests, and anticipation belongs only with novelty. This court has pointed out that some courts tend, mistakenly, to use anticipation as an equivalent of invention. (citations omitted). That is, a prior device may not be substantially identical to the patented device and therefore cannot anticipate; however, it may be that in the light of this prior device the patented device would have been obvious. (citations omitted).

"In order to anticipate, a prior device, although it does not have to be patented, must have been reduced to use and successfully performed. (citations omitted.)"

In American Air Filter Co. v. Continental Air Filters, Inc., 347 F.2d 931 (C.A.6, 1965), the Court cited the above discussed Heckethorn case with complete approval and held that the concept involved in the American Air Filter case was "too obvious to be patentable." In

discussing the situation before reaching the ultimate holding that the patent was invalid, the Court stated at page 932 of 347 F.2d :

> The patent herein involved relates to a method and material for operating air filtering equipment. The growth of the air filtering industry, like others in this mechanical age, has been characterized by continuing improvement. As stated by the Ninth Circuit, the patentee, Rivers, 'did contribute something to the art' and the sole question is whether such contribution constituted patentable invention, 35 U.S.C.A. § 101, and was something that would not have been 'obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.' 35 U.S.C.A. § 103."

And see also Popcorn-in-Oil Council, Inc. v. Wyndall's Super Market, Inc., 355 F.2d 372 (C.A.6, 1966).

The patent in suit was issued in 1949. There are three claims arranged in order of increasing scope, i. e., with the narrowest claims first. For this reason claim three is the important claim in this case. It reads as follows:

> "3. An electric light socket for refrigerator panels comprising an outer flexible housing having a hollow interior with a form opening adapted to receive an electric light bulb, means for connecting said socket to a suitable source of electrical supply, a continuous flange extending around the outside of said housing to form a non-circular shape, a plurality of shorter flanges extending partially around the outside of said housing and spaced slightly from said continuous flange on a corresponding line, said socket adapted to be installed without the use of tools in a single non-circular opening in a refrigerator panel corresponding in shape to the shape of said housing between said flanges, so that said flanges grip the edges of the opening and hold the edges in the space between said continuous flange and said shorter flanges, so that said socket may not be accidentally turned and said continuous flange contacts the face of the refrigerator panel around the entire circumference of the opening to provide a moisture proof seal around said opening."

What this patent actually pretends to cover is what plaintiff contends is a new configuration for the light socket commonly used in the cooling compartment of a refrigerator. The subject matter of the patent in suit is installed by simply reaching inside the cooling compartment of the refrigerator being assembled and pushing the light socket into a previously cut hole in the refrigerator casing. The socket is made of rubber, hence is contractable allowing this type of installation without the use of tools. The socket has what is essentially a groove around its circumference which is slightly narrower than the thickness of the refrigerator casing which fits into the groove. This results in the light socket clamping the casing or panel as it is described by the plaintiff thereby resulting in a moisture proof seal (if the appropriate material is used). The circumference of the socket which is the subject matter of the patent in suit is non-circular having an oval or egg shape appearance; thus allegedly preventing the light socket from turning after installation and presumably forcing a true alignment at the time of assembly. Because this light socket is installed from the front or more accurately from within the cooling compartment, it is stated that it may be quite easily removed for servicing. It should be noted that what the Court has described as a groove around the circumference of the light socket is, as stated in Claim 3, a continuous flange on one side and a plurality of shorter flanges extending partially around the circumference on the other side. It is the plurality of shorter flanges which are compressed at the time of installation thereby permitting somewhat easier installa-

tion than might be possible if a full circumferential flange had to be compressed. Except for this, that portion of the device described in the patent in suit acts much the same as a groove. Plaintiff contends that the great commercial success of this device, of which there was little evidence, is strong evidence of invention. Plaintiff contends that the industry had long needed a front mounted light socket which could be installed without the use of tools, could be removed for servicing without cutting into the casing of the refrigerator, which would be moisture proof, and which would not turn after being installed. The record in this case evidences little in the way of proof to support plaintiff's argument that these points claimed to be covered by plaintiff's invention constituted any problems within the refrigerator industry. No evidence of consequence was introduced to establish that there was any problem with maintenance of refrigerator light sockets. Obviously if soap was necessary to install other types of light sockets it could not create a significant production cost. The record demonstrates that the extent of the moisture proof seal, according to the plaintiff's witnesses, depends more on the material used in the manufacture of the light socket than on the installation or method of installation of the light socket.

In response to plaintiff's claims the defendant relies upon a socket developed by the Packard electric division of the General Motors Corporation sometime between 1937 and 1941. The drawings for this are defendant's exhibits 3 and 4. Comparison drawings showing the device of the patent in suit and the Packard 1941 socket and also typical accused sockets were offered as charts 1 and 2 of defendant's exhibits 32 and 32A.

The Packard socket developed by General Motors Corporation differs from the plaintiff's device only in that it must be inserted from the outside of the refrigerator rather than from the cooling compartment as distinguished from the patent in suit. In other words, the pat-

ent in suit is a reversal of the flange parts of the Packard 1941 socket in that the Packard socket has a heavy flange which abuts the refrigerator housing on the outside and a plurality of shorter flanges which abut the refrigerator housing on the inside. The patent in suit describes a device which has a heavy flange which abuts the refrigerator housing on the inside and a plurality of shorter flanges which abut the refrigerator housing on the outer side. In each instance it is the smaller flanges which are easily compressed allowing them to be forced through a precut hole in the refrigerator housing at the time of installation. The dimension between the smaller flanges and the heavy flange is somewhat less than the thickness of the refrigerator housing thereby permitting, through the use of appropriate materials, a compressed fit which acts as a moisture seal.

Such a discussion of the essentials of the device can only lead the finder of fact to conclude that the patent in suit issued in 1949 describes the Packard Electric Company 1941 socket with a reversal or transposition of certain of its parts. Thus, keeping in mind the steps suggested by the Court of Appeals for the Sixth Circuit in Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406, 411, the Court has determined that aside from all other prior art cited, the prior art exemplified by the Packard Electric Company 1941 socket is applicable in this case.

The second issue, i. e., a determination of what, if any, improvement has been made would depend upon the manner and method of assembling refrigerators and would raise an issue as to the extent of the need for removal and replacement of refrigerator light sockets about which there was no evidence.

As to the final step, that is the determination of whether the improvement would have been obvious to one skilled in the art. It appears to the complete satisfaction of this court that a mere recitation of a desire for a light socket

to be installed from the inside of the housing rather than from the outside would have lead any person skilled in the art to make the transposition of parts made by the patentee.

Therefore, this court concludes that the presumption of validity has been overcome, that the invention claimed by the plaintiff patentee was disclosed and anticipated by the Packard Electric Company 1941 socket, that no *substantial* innovation was made by the patent in suit, that there was no invention because the transposition of parts could or should have been obvious to one skilled in the art when the problem was presented.

For the reasons herein stated an order may be entered dismissing the complaint.